IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PENNY BALL, as personal representative
of THE ESTATE OF MICHAEL WILLIAMSON,

    Plaintiff,

v.                                                                CV 11-94 JB/WPL

DATS TRUCKING, INC., and
JESUS CANO-GARCIA,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

The parties in this matter seek the Court's approval of a settlement agreement negotiated on behalf of minors. (Doc. 47.) For the reasons detailed below, I conclude that the settlement is fair, and I recommend that the Court grant Plaintiff's Agreed Motion for Approval of Minor Settlement.

**BACKGROUND**

Penny Ball is the mother of decedent Michael Williamson, who is also survived by his father and his minor sons Leo Williamson and Thaddeus Mercer. (*Id.* at 2.)[1] Ball alleges that Jesus Cano-Garcia, an employee with DATS Trucking, Inc., negligently drove his semi-tractor over Williamson while Williamson was asleep or passed out beneath the vehicle. (*Id.* at 1.) Her complaint alleges that Williamson suffered fear, pain, and injuries that ultimately led to his death as a result of Cano-Garcia's activity. (Doc. 1 Ex. A at 4.) Ball originally brought this suit against DATS Trucking and Cano-Garcia in the Second Judicial District Court of New Mexico, and Cano-Garcia removed the case to this Court shortly thereafter. (Doc. 1.)

---

[1] Unless otherwise specified, "Williamson" is used here to refer to Michael Williamson.

I conducted a settlement conference on March 9, 2012, resulting in a settlement between the parties (Doc. 43), and Ball filed the instant Agreed Motion for Approval of Minor Settlement several months later (Doc. 47). Upon the parties' motion (Doc. 49), attorney Corbin P. Hildebrandt was appointed as guardian ad litem for Leo Williamson and Thaddeus Mercer to advise the Court regarding the fairness of the settlement to the minors (Doc. 50). In his amended report to the Court, the guardian ad litem discusses his independent investigation and analysis of the case and the terms of the settlement before recommending that the Court approve the settlement agreement. (Doc. 57.)

After reviewing the guardian ad litem's original report (Doc. 53), I conducted a hearing on the matter (Doc. 56). Ball testified that she understood that a jury might award more or less than the settlement amount if her case went to trial. (*See id.*) She also stated that she understood that if the settlement were approved, it would be a full and final resolution of her claims and the minors' claims against the Defendants. (*See id.*) She concluded that she was satisfied with the settlement and that she wanted the Court to approve it. (*See id.*) Her testimony indicates that she comprehends the implications of this resolution. The guardian ad litem testified that he had discussed his report with both parties and that he had nothing new to add to the record. (*Id.*)

## THE SETTLEMENT AGREEMENT

The Agreed Motion for Approval of Minor Settlement proposes a total settlement amount of $40,000. (Doc. 47 at 4.) Of this amount, $1,500 is to be paid to Williamson's father, Michael Williamson, Sr., as reimbursement for funeral expenses. (*Id.*) Although Ball's current and former attorneys agreed to waive their legal fees, another $16,005.21 is to be paid to these attorneys to cover costs and expenses; of this amount, $3,881.38 will be paid to Ball's previous counsel,

while the remaining $12,123.83 will be paid to Ball's current attorneys. (Doc. 57 at 3-4.)[2] Another $22,063.68 will be dedicated to the creation of structured settlement annuities for the benefit of Williamson's children; after fees, $10,642.39 is to be placed in an annuity for Leo Williamson, and $10,671.29 is to be placed in an annuity for Thaddeus Mercer. (*See id.* at 4; *see also* Doc. 47 at 4.) The remaining $431.11 is to be distributed to the minors to cover clothes and other necessities, with half to each child. (*See* Doc. 59.)[3]

### FAIRNESS EVALUATION

"The general rule [in many jurisdictions] is that a next friend or guardian *ad litem* acting for a minor may negotiate a settlement, but such compromise is not binding on the infant in the absence of judicial approval." *Garcia v. Middle Rio Grande Conservancy Dist.*, 664 P.2d 1000, 1006 (N.M. Ct. App. 1983) (citations omitted), *overruled on other grounds by Montoyoa v. AKAL Sec.*, 838 P.2d 971, 974 (N.M. 1992). Although New Mexico has not adopted this rule, the parties to a case may still choose to present such a settlement to the court for approval. *See Shelton v. Sloan*, 977 P.2d 1012, 1019-20 (N.M. Ct. App. 1999). In such circumstances, the reviewing court must determine whether the settlement is fair and in the minors' best interests and must reject the settlement if this is not the case. *Id.* at 1020. This rule stems from the reviewing court's "special obligation to see that [minors] are properly represented, not only by

---

[2] The parties' motion originally allocated $17,381.62 to attorneys for expenses, with $13,500.24 apportioned to Ball's current attorneys. (Doc. 47 at 4.) However, after I raised some concerns regarding several of the charges itemized by Ball's counsel (Doc. 48), Ball faxed me an updated itemized expense list that reduced their share of the settlement to $12,123.83 (*see* Doc. 57 Ex. A). The guardian ad litem's amended report reflects the updated expense total for Ball's current counsel. (*See* Doc. 57 at 3.)

[3] The guardian ad litem's original report reflected some inconsistency in the distribution of the settlement. (*See* Doc. 53 at 3-4.) The guardian ad litem's amended report resolves most of these concerns, with only the $431.11 unaccounted for. (*See* Doc. 57 at 4.) The disposition of this remainder was clarified at a status conference, with the guardian ad litem agreeing that this arrangement was appropriate and fair to the parties. (*See* Doc. 59.)

their own representatives, but also by the court itself." *Garcia*, 664 P.2d at 1006 (citing *United States v. Reilly*, 385 F.2d 225, 228 (10th Cir. 1967)).

The guardian ad litem suggests that the Court consider the following factors in determining whether the settlement here is fair and in the best interests of Williamson's minor children: 1) whether the settlement terms were fairly and honestly negotiated; 2) whether serious questions of law or fact exist, placing the ultimate outcome of litigation in doubt; 3) whether the value of an immediate recovery outweighs the mere possibility of a greater future recovery after protracted and expensive litigation; and 4) whether the settlement is fair and reasonable in its effect. *Cf. Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (discussing the factors for determining whether a class action settlement is "fair, reasonable and adequate"). I agree that these factors provide useful guideposts.

There is nothing to indicate that this settlement was not fairly and honestly negotiated. Having conducted a settlement conference in this matter and having engaged in informal talks with counsel to facilitate negotiations, I can attest that Ball's counsel has vigorously represented Ball and her interests.

In preparing for the settlement conference and the fairness hearing, I reviewed the file, familiarized myself with the factual and legal issues in this case, and traveled to the scene of the accident to familiarize myself with the physical location where the incident occurred. It is clear that the ultimate outcome would be in doubt if this case went to trial. Ball acknowledged at the hearing that the case presents difficult issues of liability and that damages could be limited by Williamson's mental health issues, his failure to hold a steady job, and his failure to file income tax returns. (*See* Doc. 56.) As the guardian ad litem notes, "[T]his case clearly could have been a defense verdict with Plaintiffs [sic] eventually owing money to their counsel." (Doc. 57 at 5.)

Further, because of the uncertainty surrounding the results of a trial, the value of an immediate recovery outweighs the possibility of a greater future recovery after protracted and expensive litigation, including the likelihood of an appeal.

The final factor suggested by the guardian ad litem – whether the settlement is fair and reasonable in effect – requires special consideration. *See Shelton*, 977 P.2d at 1020 (emphasizing that the Court must consider "the fairness of the agreement itself"). As the guardian ad litem reports, the settlement total of $40,000 "is within the range of probable outcomes" and constitutes "a fair amount [reached] for the appropriate reasons." (Doc. 57 at 5.) In light of Ball's claims, the challenges she would face in establishing liability, DATS Trucking and Cano-Garcia's defenses and their resources to pay the claims, and the unpredictability of a jury verdict, I conclude that the total settlement amount is fair and reasonable.

I also determine that the decision to distribute the funds in the manner specified in the settlement is fair and reasonable. The guardian ad litem's amended report describes the proposed structured settlement annuities to be created for Williamson's two minor children. (*Id.* at 4.) Each minor beneficiary will receive four fixed annual payments from the annuity starting on his eighteenth birthday, with the funds to be fully depleted on the youngest minor's twenty-first birthday. (*Id.*) The remaining $431.11 not placed into the structured settlement annuities is to be distributed to the minors, with half to each child. (*See* Doc. 59.) Ball has agreed to the creation of the structured settlement annuities and testified at the fairness hearing that she understands that the settlement proceeds are to benefit her grandchildren rather than herself. (Doc. 56.) I conclude that these arrangements are fair and reasonable, and I will recommend that the periodic payments and the one-time disbursement be made in conformity with the conditions set forth on page 4 of the guardian ad litem's amended report.

The costs incurred by Ball's two attorneys – totaling $16,005.21 – constitute a significant proportion of the $40,000 settlement amount. However, having reviewed the itemized list of expenses provided to me by Ball's current attorneys, I concur with the guardian ad litem's observation that "this case was fought especially hard on the issue of liability, and without incurring the litigation costs forwarded by [Ball's] attorneys, [Ball's] case would not have been in a position to be filed, much less prosecuted as it was through several depositions and the mediation." (Doc. 57 at 4.) The travel costs, although substantial, are reasonable considering that Ball lives outside of New Mexico, Ball's attorneys operate out of Missouri, the events leading to this litigation occurred in New Mexico, and consequently the settlement conference and the bulk of depositions occurred in New Mexico. Other itemized costs, including expert expenses (much of which were later reimbursed) and the vendor charges associated with depositions, appear to be within the range of appropriate costs in light of the circumstances here. Finally, I note that Ball's attorneys have agreed to waive their legal fees, further increasing the proportion of the settlement that will eventually reach the minor beneficiaries here. Based on these considerations, I conclude that the total costs are reasonable.

### RECOMMENDATION

For the reasons explained above, I recommend that the Court:

1) adopt the guardian ad litem's report as amended (Doc. 57);

2) find that the proposed settlement involving minors is fair;

3) grant the parties' Agreed Motion for Approval of Minor Settlement (Doc. 47);

4) approve the creation of the proposed structured settlement annuities and the payment plans for the minor beneficiaries as set forth in the guardian ad litem's amended report (Doc. 57 at 4); and

5)  dismiss with prejudice Ball's complaint against DATS Trucking and Cano-Garcia.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.